[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 989 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 990 
The appellant, Thomas Wayne Hamilton, Jr., was convicted of murder for the killing of his wife, Donna Jo Price Hamilton, a violation of § 13A-6-2, Ala. Code 1975. He was sentenced to life in the penitentiary. He raises six issues on appeal.
 I
The appellant contends that the trial court erred in denying his motion for a continuance to secure an expert evaluation concerning his mental state before and after the offense. Pertinent facts are set out in chronological order below:
December 9, 1993 — The murder was committed.
February 25, 1994 — The indictment was returned.
 March 25, 1994 — The appellant was arraigned and trial was set to begin on June 27, 1994.
 June 7, 1994 — The defense filed a motion for a continuance arguing lack of full discovery. There was no reference in that motion to the appellant's mental condition.
 June 24, 1994 — The defense faxed a motion to the trial court requesting a continuance, alleging, among other things, that more time was needed for his retained psychiatrist to complete a thorough mental evaluation. The trial court denied this motion and indicated that the trial would proceed as scheduled.
 June 27, 1994 — The appellant filed a petition for a writ of mandamus in the Court of Criminal Appeals regarding the trial court's denial of his motion for a continuance. This court denied the petition.
 June 28, 1994 — The case was called for trial. Before beginning the trial, the trial court held a hearing to allow the appellant to argue his motion for a continuance. The motion was denied after arguments were heard and the trial began.
The appellant argues on appeal that it was not until June 7, 1994, that the appellant's family could raise the $3,000 retainer required by Dr. Douglas A. Sargent, the psychiatrist retained to evaluate the appellant's mental condition. Dr. Sargent informed the defense that he had expedited the evaluation of the appellant but that interviews with family members had brought to light facts requiring additional testing and that it would be physically impossible to complete that testing by the trial date of June 27, 1994. He stated that at that point, without the additional testing, it was impossible to give an accurate and scientifically supportable report of the appellant's mental health at the time of the murder and at the time of trial. However, Dr. Sargent speculated that the appellant suffered from a condition known as intermittent explosive disorder, a condition that would support a verdict of not guilty by reason of mental disease or defect. Dr. Sargent requested an additional two weeks in which to complete the testing.
The trial judge denied the motion for a continuance and stated the following reasons for the denial. Defense counsel, Mr. Spears, had represented the appellant since his arrest. The defense knew that the appellant *Page 991 
had been classified as a suicide risk in the Chilton County jail at the time of his arrest. The defense requested that the court order an evaluation of the appellant's mental state. The court granted this motion on December 20, 1993, the day it was filed. C.R. 18. This motion and the order granting it predate the return of the indictment and the arraignment. According to the trial judge, these facts are an "indication early in the record that Mr. Spears certainly appreciated the issue of the mental state of the defendant and how that might have a bearing on a potential defense." R. 27. "The written waiver of arraignment [filed on March 22, 1994,] included the plea of not guilty and not guilty by reason of mental disease or defect." R. 27. The Taylor Hardin Secure Medical Facility conducted a forensic evaluation pursuant to the December 20 defense motion and issued a report on the appellant's mental health, which was filed in the circuit court on January 14, 1994. The trial court stated that the Taylor Hardin report reflected that the appellant "could profit from long-term, perhaps, in-patient treatment for his alcohol dependence" and recommended further therapeutic efforts directed at assisting Mr. Hamilton in discovering other strategies for managing frustration, anxiety, and self-esteem issues that do not include intoxication. . . . [These] matters in the psychologist's opinion . . . do not stand in the way of the defendant proceeding with the disposition of his trial." R. 25. The indictment in this case is dated February 25, 1994, which is five or six weeks after the Taylor Harden evaluation. R. 27. "There appears in the record no further request [to] the Court to entertain any kind of motions or hearings relative to the defendant's mental state between the time that the report was filed from Taylor Hardin really up and through this date with the exception of the motion to continue that was filed on Friday June 24, 1994." R. 28. The trial court stated that the June 7, 1994, motion by the defense for a continuance addressed discovery issues, and,
 "there was no mention during the June 7th, 1994, hearing that there was any intention on Mr. Spears' part to pursue further mental evaluation or examination of the defendant in pursuit of a not guilty by reason of mental disease or defect defense. For all that the Court knew, the issues of mental disease or defect had been resolved by the examinations and prescribed treatments that were afforded the defendant early on by Taylor Hardin Secure Medical Facility and those attending the defendant thereafter.
 "The defense counsel is a very sharp and well-thought-of attorney with regards to his legal abilities and skills and his thoroughness with respect to raising issues that he knows to be important to trial practice and a defense in cases of this nature, and I think it's reasonable under these circumstances for the Court to certainly reach a conclusion that this last minute scramble for a continuance or delay of the trial with regards to pursuing this mental disease of defect type of defense is lacking in merit and is instituted for delay purposes."
R. 28-29.
We find no evidence in the record indicating an abuse of discretion by the trial court in denying the appellant's motion for a continuance.
 "It is well settled law that the disposition of a motion for continuance is vested in the sound discretion of the trial court and that its ruling will not be disturbed on appeal, except upon a clear showing of abuse of discretion. Busby v. State, 412 So.2d 837 (Ala.Crim.App. 1982); Avery v. State of Ala, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1939). It is within the sound discretion of the trial judge to deny a motion for continuance for the purpose of obtaining further study and evaluation of a defendant. Beauregard v. State, 372 So.2d 37 (Ala.Crim.App. 1979). There is no obligation of the trial court to grant a continuance for the purpose of preparing an insanity defense, Lee v. State of Alabama, 386 F.2d 97 (5th Cir. 1967), and, lastly, the defense of not guilty by reason of insanity does not present the issue of the mental competency of the accused to stand trial. Hawkins v. State, 267 Ala. 518, 103 So.2d 158 (1958)." *Page 992 
Carroll v. State, 445 So.2d 952, 954 (Ala.Cr.App. 1983); see also McFarland v. State, 581 So.2d 1249 (Ala.Cr.App. 1991);Taylor v. State, 507 So.2d 1034 (Ala.Cr.App. 1987) ("[i]t is within the sound discretion of the trial judge to deny a motion for continuance for the purpose of obtaining further study and evaluation of a defendant"); Wisdom v. State, 515 So.2d 730
(Ala.Cr.App. 1987) ("there is no obligation of the trial court to grant a continuance for the purpose of preparing an insanity defense."); Based on the facts presented above, we find no error in the ruling of the trial.
 II
The appellant contends that the trial court erred in denying his motion for a mistrial in which he alleged that the jury pool was tainted by pretrial publicity and by "statements" made by a juror.
No objection was made at the trial level concerning pretrial publicity. Motions for a mistrial based on alleged juror discussions about the case were made, but there was no mention of an objection based on pretrial publicity. Therefore, this issue is precluded from appellate review. Furthermore, the trial court stated that: "I have granted every single challenge for cause of individual jurors that [has] been made by anybody and exercised some discretion on my own when I felt like a juror could not be fair and impartial and could not serve properly in this case." R. 265.
The following occurred concerning the issue of juror misconduct. After a recess, the trial judge was informed that some comments, apparently concerning the court, were made by juror H.L.N. during the recess. The trial judge called H.L.N. to the witness stand and the trial judge and the parties attempted to question him about an incident where he allegedly made strange comments concerning the court or the trial to the court clerk.
The record supports the trial court's conclusion that this juror's nonsensical rambling was the result of a mental defect and was probably a response to "voices" heard only by him. While discussing the matter with the trial judge, the prosecution stated that H.L.N. "has got to go. . . . [H]e is going to compromise the whole trial." R. 517. The defense then moved for a mistrial. The defense did not specify as a ground for its motion that the jury had been tainted by H.L.N.'s comments but instead alleged that photographs of the crime scene introduced by the prosecution had upset H.L.N. However, we will assume that the trial court understood that ground for the motion was that the jury had been tainted by H.L.N.'s remarks. The trial court denied the motion and ordered that H.L.N. be excused from the jury and that an alternate be substituted in his place. The defense then objected to the trial court's removal of H.L.N. from the jury. The trial court stated:
 "I don't see that the trial has been disturbed at all based on what I had heard . . . and what happened and what I have observed in the courtroom. I don't think a mistrial is called for at all. I think you have still got a situation where you have got a fair and impartial jury, and the proceedings have been flawless from the standpoint of there being any irregularities or anything signaling we have got a problem here." R. 520.
After an off-the-record discussion, the defense stated, "I think we all agree, and I'll say for the record, that, Judge, maybe for the first time during the trial I am being reasonable, and I don't object to Mr. [H.L.N.] being released from the jury under these circumstances." R. 520-21. Concerning the appellant's motion for a mistrial the law is clear that,
 " '[a] motion for mistrial "is addressed to the sound discretion of the trial court, and its ruling will not be reversed in the absence of a clear showing of abuse of discretion." Ex parte Jefferson, 473 So.2d 1110, 1114 (Ala. 1985), cert. denied, 479 U.S. 922, 107 S.Ct. 328, 93 L.Ed.2d 300 (1986). In cases involving juror misconduct, a trial court generally will not be held to have abused its discretion "where the trial court investigates the circumstances under which the remark was made, its substance, and determines that the rights of the appellant were not prejudiced by the remark." Bascom v. *Page 993 State, 344 So.2d 218, 222 (Ala.Cr.App. 1977). However, the trial judge has a duty to conduct a "reasonable investigation of irregularities claimed to have been committed" before he concludes that the rights of the accused have not been compromised. Phillips v. State, 462 So.2d 981, 990 (Ala.Cr.App. 1984).'
 "Holland [v. State], 588 So.2d [543,] at 546[(Ala.Cr.App. 1991)].
Sistrunk v. State, 596 So.2d 644, 648 (Ala.Cr.App. 1992).
The trial court promptly investigated its concerns about alleged comments made by juror H.L.N. Both parties had an opportunity to question him. The testimony of H.L.N. does not indicate what was alleged to have been said, to whom, or whether the remarks concerned this case. There is nothing in the record to support a claim that the entire juror panel was prejudiced by anything that he might have said. There is nothing indicating that the rights of the appellant were prejudiced by whatever H.L.N. said during the recess. The trial court acted properly in overruling the appellant's motion for a mistrial and in replacing H.L.N. with an alternate juror.
 III
The appellant contends that the trial court erred in denying his motion for a judgment of acquittal. He argues that the evidence that the appellant was suffering from a severe mental disease that prohibited his knowing and understanding the nature and quality of the act of murder was not rebutted. Therefore, the appellant argues, he could not be found to be capable of forming the intent to cause death, a necessary element to sustain a conviction for intentional murder. See § 13A-6-2, Ala. Code 1975. The burden is on the defense to prove that the appellant was suffering from a mental disease or defect when he committed murder. The prosecution is not obligated to rebut the defense's expert testimony.
 " 'There is no requirement that the government rebut expert testimony with its own expert. . . .' "
 " '. . . The responsibility is upon the jury to weigh all the evidence, expert and lay, pertaining to the issue of the accused's mental competency. The weight to be accorded all such evidence is solely within the jury's province. They may reject it all even though it is without conflict.'
Ellis v. State, 570 So.2d 744, 751-52 (Ala.Cr.App. 1990) (emphasis added). The jury heard testimony in this case that would permit a finding that the appellant was not suffering from a mental disease or defect at the time he committed the murder. Therefore, in this case,
 " '[P]ersons on trial for commission of crimes are presumed sane. . . . Thus, where a plea of not guilty by reason of insanity is filed, the burden upon the defendant is to establish the issue of legal insanity by a preponderance of the evidence. Grissom v. State, 33 Ala. App. 23, 30 So.2d 19 (1947); Lee v. State, 246 Ala. 343, 20 So.2d 471 (1944); Lide v. State, 133 Ala. 43, 31 So. 953 (1901). . . . [T]he burden never shifts to the State nor rests on the State. Grammer v. State, 239 Ala. 633, 196 So. 268
(1940).
 " '. . . [T]he question of insanity at the time of the commission of the crime is a matter to be determined by the jury from a consideration of all the evidence. Carr v. State, 43 Ala. App. 642, 198 So.2d 791 (1967); Hawkins v. State, 267 Ala. 518, 103 So.2d 158 (1958). In making its determination, the jury may reject all expert testimony though it is without conflict. Hockenberry v. State, 246 Ala. 369, 20 So.2d 533
(1945); George v. State, 240 Ala. 632, 200 So. 602 (1941); Parrish v. State, 139 Ala. 16, 36 So. 1012 (1903). However, opinion testimony, even of experts in insanity cases, must be weighed by the jury and may not be arbitrarily ignored. Pickett v. State, 37 Ala. App. 410, 71 So.2d 102
[(1953)], cert. denied, 260 Ala. 699, 71 So.2d 107 (1954); Boyle v. State, 229 Ala. 212, 154 So. 575 (1934).'
". . . .
". . . .
 " 'In order for this court to reverse, evidence of insanity must be "overwhelming" *Page 994 
. . .; "uncontradicted," . . .; and "clear . . . strong and undisputed" . . . [.] Furthermore, there may be no facts in evidence which would support a reasonable inference that the defendant was sane.
Ellis, 570 So.2d at 750-51 (emphasis added).
In the present case the following facts, if believed by the jury, would support a reasonable inference that the defendant was sane at the time of the murder. The appellant and the victim had had a tumultuous marriage. It was common knowledge that they fought and were abusive toward one another. Witnesses inferred that theirs was a love/hate relationship, evidenced by the fact that they divorced and reconciled twice. The appellant's family members testified that the appellant became mean when he drank alcoholic beverages. There was evidence that the appellant had been drinking beer at the time of the killing. The appellant told certain family members immediately after the victim was murdered that he had killed the victim, and he related certain details of the murder to his brother and sister-in-law. The mental evaluation from the Taylor Hardin Secure Medical Facility indicated that the appellant did not suffer from a mental disease or defect. " 'This court cannot, in the absence of blatant disregard for the law, substitute itself for the jury.' " Ellis, 570 So.2d at 751, quotingSistrunk, 455 So.2d at 289-90.
 " '[T]he accused is not entitled to a directed verdict on the issue of insanity unless the evidence of insanity is clear, strong, and undisputed. Boyle v. State, 229 Ala. 212, 222, 154 So. 575 (1934).' Cunningham v. State, 426 So.2d 484, 486 (Ala.Cr.App. 1982).
Ellis, 570 So.2d at 751. Here, the evidence supporting the defense that the appellant suffered of a mental disease or defect was disputed.
 " ' ". . . [A] reasonable doubt of sanity, raised by all the evidence, does not authorize an acquittal." Boswell, [v. State, 63 Ala. 307, 326
(1880)]. . . . "Thus, where the whole evidence does not satisfy the minds of the jury that the accused is insane at the time of the commission of the crime with which he is charged, the jury should convict the defendant, notwithstanding that the medical witnesses were of the opinion that such person was insane." 31 Am.Jur.2d, Expert and Opinion Evidence, Section 186 (1967).'
 "Cunningham v. State, 426 So.2d [484] at 490 [(Ala.Cr.App. 1982)]."
Ellis, 570 So.2d at 751. (emphasis added).
The jury heard evidence concerning the appellant's mental state at the time of the murder only from defense witness, Dr. Sargent. The testimony presented by the psychologist from Taylor Hardin Secure Medical Facility, the prosecution's witness, was excluded from the jury's consideration on procedural grounds.
 " 'Expert testimony, even when uncontradicted, is not conclusive on the issue of sanity, . . . and the jury may find such testimony adequately rebutted by the observations of mere laymen.' [United States v.] Mota, 598 F.2d [995] at 999[(5th Cir. 1979)].'
 " '. . . A defendant is not entitled to a judgment of acquittal simply because he offers expert testimony on the issue of insanity and the Government attempts to rebut it without any expert witnesses. The expert's opinion, even if uncontradicted, is not conclusive. At the same time, it may not be arbitrarily ignored, and some reason must be objectively present for ignoring expert opinion testimony.'
 "United States v. Hall 583 F.2d [1288] at 1294 [(5th Cir. 1978)] (footnotes omitted).
 "A factfinder is not bound by expert testimony 'even if all of the witnesses are presented by only one side.' United States v. Pitts, 428 F.2d 534, 536 (5th Cir.), cert. denied, 400 U.S. 910, 91 S.Ct. 154, 27 L.Ed.2d 149 (1970). . . .
". . .
 " '. . . Presentation of a mere reasonable doubt of sanity does not authorize an acquittal.' Sistrunk, 455 So.2d at 289.
 " '. . .[w]here there is ample evidence offered by the state to support a verdict, it should not be overturned even though the *Page 995 
evidence offered by the defendant is in sharp conflict therewith and presents a substantial defense.' Fuller v. State, 269 Ala. 312, 333, 113 So.2d 153, 172 (1959), cert. denied, 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960).
 " 'In reviewing the sufficiency of the evidence in criminal cases, we are to view the evidence and all inferences that may reasonably be drawn from it in a light most favorable to the government. . . . Whether evidence is direct or circumstantial, we must accept all credibility choices that tend to support the jury's verdict. . . . The standard of review is whether a reasonably minded jury must necessarily have entertained a reasonable doubt of the defendant's guilt. If the jury could not reasonably have concluded that the evidence excluded every reasonable hypothesis but that of guilt, then we must reverse the convictions.'
 "United States v. Hinds, 662 F.2d 362, 366 (5th Cir. 1981), cert. denied, 455 U.S. 1022, 102 S.Ct. 1720, 72 L.Ed.2d 140 (1982).
". . . .
 " 'The weight of the evidence is clearly a different matter from the sufficiency of the evidence. The sufficiency of the evidence concerns the question of whether, "viewing the evidence in the light most favorable to the prosecution, [a] rational fact finder could have found the defendant guilty beyond a reasonable doubt." Tibbs v. Florida, 457 U.S. 31, 37, 102 S.Ct. 2211, 2216, 72 L.Ed.2d 652 (1982). Accord Prantl v. State, 462 So.2d 781, 784
(Ala.Cr.App. 1984). . . .' "
 " 'In contrast, "[t]he 'weight of the evidence' refers to 'a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.' " Tibbs v. Florida, 457 U.S. at 37-38, 102 S.Ct. at 2216. . . . We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial. E.g., Franklin v. State, 405 So.2d 963, 964 (Ala.Cr.App.), cert. denied, 405 So.2d 966
(Ala. 1981); Crumpton v. State, 402 So.2d 1081, 1085 (Ala.Cr.App.), cert. denied, 402 So.2d 1088
(Ala. 1981); Nobis v. State, 401 So.2d 191, 198
(Ala.Cr.App.), cert. denied, 401 So.2d 204
(Ala. 1981). " '[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine.' " Harris v. State, 513 So.2d 79, 81 (Ala.Cr.App. 1987) (quoting Byrd v. State, 24 Ala. App. 451, 136 So. 431 (1931)). In this case the conflicting evidence offered by the state and by [the defendant] simply presented a jury question, Gunn v. State, 387 So.2d 280, 282 (Ala.Cr.App.), cert. denied, 387 So.2d 283 (Ala. 1980), and the verdicts rendered thereon are conclusive on appeal, Roberson v. State, 162 Ala. 30, 32, 50 So. 345, 346 (1909); Bragg v. State, 518 So.2d 847, 849 (Ala.Cr.App. 1987).'
 "Johnson v. State, 555 So.2d 818, 819-20
(Ala.Cr.App. 1989).
Ellis, 570 So.2d at 752-55 (original emphasis omitted; emphasis added). The burden on a defendant to prove that he or she was suffering from a mental disease or defect at the time he committed murder is very high. The evidence in the record regarding the defense which is not "overwhelming . . . uncontradicted . . . clear strong and undisputed." Ellis, supra. To the contrary, the judgment of the trial court is affirmed because sufficient evidence was presented from which the jury could find that the appellant was not suffering from a mental disease or defect at the time he committed the murder.
 IV
As an alternative to his argument that his motion for a judgment for acquittal should have been granted, see Part III of this opinion, the appellant argues that the trial court erred in refusing to charge the jury as to manslaughteronly. The trial court charged the jury on murder and on heat-of-passion manslaughter as a lesser included offense. There is, however, no merit to the appellant's contention that manslaughter could have been the only possible charge against him. First, neither at trial nor in his motion for a new trial did the appellant specify which type of manslaughter was applicable. "In Alabama, manslaughter may be either a homicide committed recklessly or a *Page 996 
homicide that would be murder except that it was committed due to a sudden heat of passion caused by legal provocation. §13A-6-3, Code of Alabama 1975." Barnett v. State, 540 So.2d 81
(Ala.Cr.App. 1988). The appellant's defense at trial was that he did not know what he was doing and did not appreciate the consequences of killing the victim because he suffered from a severe mental disease or defect. There is no dispute that the killing was deliberate. Therefore, under the facts of this case, the jury could have found the appellant guilty of intentional murder or heat-of-passion manslaughter. There was no indication whatsoever that the appellant's actions were reckless so as to come within reckless manslaughter as defined in Alabama Code 1975, § 13A-2-2(3). The trial court correctly charged the jury with heat-of-passion manslaughter as a lesser included offense to intentional murder. Sufficient evidence was presented to support the jury's verdict.
 V
The appellant contends that the trial judge erred in removing a juror for cause on the judge's own initiative. The appellant argues that § 12-6-150, Ala. Code 1975, permits only the parties to make challenges for cause and that for the trial court to remove a juror for cause without a challenge by one of the parties was reversible error. The juror in question stated during voir dire that his wife was the appellant's second cousin and that he had heard a lot about the case from different people. He stated that he "really didn't know" if returning a guilty verdict "would cause [him] trouble"; however, he indicated that he would try to be impartial but that he would rather not serve on this jury. R. 61-62. His comments reflected that he considered second cousinship to be close kinship. " '[A] veniremember whose "acquaintance with [a] party or relative [or witness] is such that it would result in probable prejudice" is subject to challenge for cause. Vaughnv. Griffith, 565 So.2d 75, 77 (Ala.Cr.App. 1990), cert. denied,498 U.S. 1097, 111 S.Ct. 987, 112 L.Ed.2d 1072 (1991)." Jonesv. State, 623 So.2d 389, 392 (Ala.Cr.App. 1993), quoting Wilsherv. State, 611 So.2d 1175 (Ala.Crim.App. 1992).
 " 'The test for determining whether a juror who is acquainted with someone involved in the litigation should be excused for cause is whether the juror's acquaintance with that person would result in "probable prejudice." . ..
 " 'Probable prejudice for any reason disqualifies a prospective juror. Qualification of a juror is a matter within the discretion of the trial court and, on appeal, this court will look to the questions propounded and the answers given by the prospective juror to see if this discretion was properly exercised." ' "
Hoobler v. State, 668 So.2d 905 (Ala.Cr.App. 1995), quoting Fordv. State, 628 So.2d 1068, 1070 (Ala.Cr.App. 1993). It is not only within the trial court's discretion to remove disqualified jurors, it is its duty. "Probable prejudice for any reasondisqualifies a prospective juror." Hoobler, supra. Here, the trial judge thoroughly questioned the veniremember and was not satisfied that the juror was unbiased towards the appellant. Based on the veniremember's responses, the trial court's removal of this juror on its on initiative was not reversible error.
 VI
The appellant contends that the trial court's allowing the prosecution to amend the indictment without the appellant's consent affected his substantive rights and therefore constituted reversible error. The trial court's granting the prosecution's motion to amend the indictment to add "Jr." to the name "Thomas Wayne Hamilton" was not error. The appellant argues that the indictment charged Thomas Wayne Hamilton with murder. Thomas Wayne Hamilton is the appellant's father. Therefore, the appellant argues, the indictment did not charge him with murder because he is Thomas Wayne Hamilton, Jr.
The trial court's allowing the State to amend the indictment to add "Jr." to the name on the indictment was not reversible error.
 "Section 15-8-90 states that an indictment may be amended 'when the name of *Page 997 
the defendant is incorrectly stated or when any person, property or matter therein is incorrectly described,' but only when the defendant consents to the amendment. However, Rule 13.5(a), A.R.Crim.P., states that as long as 'no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced,' an indictment may be amended by the court before the verdict or finding without the defendant's consent. The commentary to that rule notes that Rule 13.5(a), changes the prior procedure set out in § 15-8-90, 'except as to amendments to charge a new offense not contemplated in the original indictment.' "
Capers v. State, 606 So.2d 207 (Ala.Cr.App. 1992) (footnote omitted; emphasis original).
After reviewing the record, we conclude that no substantial rights of the appellant were prejudiced by amending the indictment. There is no indication from the record that the appellant did not know and understand that he was the person named in the indictment. The appellant has not shown that he suffered any prejudice by the amendment.
Based on the above we affirm the appellant's conviction for murder.
AFFIRMED.
All the Judges concur.